**SO ORDERED.**

**SIGNED this 14th day of September, 2016.**



_____
Robert E. Nugent
United States Bankruptcy Judge
_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: | |
| DYNAMIC DRYWALL INC | Case No. 14-11131<br>Chapter 11 |
| **Debtor.** | |

### ORDER ON RON D. BEAL'S MOTION FOR ADMINISTRATIVE EXPENSES

A discharged Kansas lawyer who is working for a stipulated fee can claim the value of service as *quantum meruit*. But when that agreement has been approved by the bankruptcy court under 11 U.S.C. § 328, it can only be altered in very unusual circumstances. Even if *quantum meruit* is an available remedy, the lawyer's services must still benefit the estate.

Debtor Dynamic Drywall, Inc. (DDI) employed the Law Offices of Ron D. Beal, PA ("Beal") as special counsel to pursue a variety of construction related

1

actions on behalf of the bankruptcy estate. Beal was to paid an hourly rate for all of that work.[1] DDI separately employed Beal to pursue a breach of contract claim against Building Construction Enterprises, Inc. ("BCE") and The Hartford Fire Insurance Company ("HFI"), the bond surety, that arose from an alleged breach of a settlement agreement reached in state court construction litigation over a public works project in Olathe, Kansas. Beal also defended DDI against an attorney's lien on certain DDI assets claimed by its former counsel, Stinson Leonard Street ("SLS"), as a result of the same litigation. In connection with this litigation, DDI filed an application for approval of Beal's employment on September 25, 2014.[2] The motion described a 40% contingent fee arrangement, but did not include a copy of the proposed Attorney-Client Agreement ("Agreement"). The Court entered an order approving the employment on October 20, 2014.[3] In pertinent part, the Agreement, as later amended, provided that Beal would receive 40% of any recovery on the claims described in the scope of representation section of the Agreement. Neither the Application, the Order, nor the Agreement referenced § 328.

After Beal commenced an adversary proceeding in this Court to pursue those claims,[4] DDI fired the debtor's lead bankruptcy counsel, Mark J. Lazzo, and hired Jeffrey A. Deines to replace him. Lazzo told Beal that both he *and* Beal had been terminated. The record is not so clear. After Lazzo's demise, Beal attempted to

---

[1] *See* Doc. 136, 138. Eight (8) adversary proceedings were ultimately commenced in 2015 by DDI against various contractors under Beal's hourly employment arrangement.
[2] Doc. 82.
[3] Doc. 110.
[4] *Dynamic Drywall, Inc. v. Hartford Fire Insurance Co., et al,* Adv. No. 15-5016 (Bankr. D. Kan.) filed February 3, 2015 (hereafter the HFI adversary proceeding).

**2**

negotiate a revised contingency fee agreement containing an additional provision assuring Beal of an hourly fee recovery if certain "compromising events" transpired. When DDI refused to agree, Beal moved to withdraw. He now claims the value of his time and expenses up to the withdrawal date as an administrative expense on the basis that he was thwarted from successfully pursuing a meritorious claim for the estate.[5] Even if Beal was discharged, which I question, it does not appear that his work on the HFI adversary proceeding benefitted the debtor.[6] DDI did not economically benefit from the action. The Kansas Court of Appeals ultimately held that DDI wasn't entitled to collect any fees from HFI under the state court settlement agreement.[7] DDI and HFI stipulated to a dismissal of the HFI litigation, making it unlikely that the debtor ever will benefit from the HFI adversary proceeding.[8] Beal did demonstrate that he stored numerous files and records of the debtor in his office for over a year and he should be reimbursed for that service. For the reasons set out below, Beal's motion must otherwise be denied.[9]

Facts

Dynamic Drywall filed this chapter 11 case on May 21, 2014. Mark J. Lazzo was employed as debtor-in-possession counsel in the first-day orders. Randall

---

[5] *See* 11 U.S.C. § 503.
[6] There is no question that Mr. Beal's work in other matters in this case was extremely beneficial, nor do I doubt that he worked hard on the HFI matter.
[7] *Building Constr. Enterprises, Inc. v. Public Bldg. Com'n of Johnson County, et al,* 2015 WL 8584771, No. 111820, 362 P.3d 1123 (Table) (Kan. App. Dec. 11, 2015).
[8] Adv. Doc. 43, filed Sept. 1, 2015.
[9] At the evidentiary hearing held on June 15, 2016 on the motion for administrative expenses, Doc. 275, Ron D. Beal appeared on his own behalf. Jeffrey Deines appeared on behalf of Dynamic Drywall, Inc. and Creath Pollak appeared on behalf of Legacy Bank, the debtor's principal lender which joined with debtor in opposing the motion.

3

Salyer signed the petition as president of DDI, a position he accepted at the behest of Legacy Bank, DDI's senior secured lender. Salyer's role was as a restructuring or workout officer. The Bank sponsored the petition's filing to preserve DDI's accounts receivable and prosecute certain contractual claims of DDI, including some potential claims against DDI insiders, mostly for the Bank's benefit. The Bank had a security interest in these claims.

Beal, DDI, and Legacy Bank signed an Attorney-Client Agreement ("Agreement") on July 24, 2014. The Agreement provided for Beal to pursue claims against BCE and HFI for allegedly breaching their settlement agreement not to object to attorney fees in the Johnson County, Kansas litigation, and to defend against SLS's claimed attorney's lien on the breach claim. Lazzo filed a motion to employ Beal under this Agreement in September and the Court entered an order approving the employment in October.[10] The Agreement is straightforward. Beal is to receive "professional fees" when the debtor receives an "economic benefit," regardless when the benefit is conferred and whether it is conferred by settlement, judgment, or after an appeal. The fees equal 40% of the benefit, calculated after deduction of Beal's expenses. Beal was entitled to recover those first. In any event, DDI was obligated to reimburse Beal for his expenses, regardless of the outcome of the case.[11] Beal commenced the adversary proceeding on behalf of DDI against HFI (and SLS) on February 3, 2015.[12] The Agreement was later revised in April of 2015,

---

[10] *See* Doc. 82 concerning the application to employ Beal as special counsel, but note that the Agreement was not attached, and Doc. 110, order granting the application.
[11] *See* Trial Ex. A, ¶¶ 3 and 4.
[12] Adv. No. 15-5016.

4

adding that Beal was authorized to pursue affirmative claims against SLS in the pending HFI adversary proceeding.[13] The adversary complaint was then amended to assert a malpractice or breach of fiduciary duty claim against SLS related to its billing practices in the Johnson County action.[14]

The Hartford Litigation

This Court has twice discussed the underlying state court case in prior orders.[15] BCE was a general contractor on a public works project in Olathe. DDI was one of BCE's subcontractors and HFI wrote the public works surety bond that assured subcontractors they would be paid. Payment disputes among various parties to the contract ensued, resulting in a lawsuit being filed in Johnson County in 2006. In 2010, BCE, HFI and DDI settled all their claims except for DDI's "prevailing party" claim for attorney fees and expenses under BCE's subcontract and HFI's bond. At some point, BCE became insolvent, focusing DDI's collection efforts on HFI. DDI's attorney fee claim was tried in 2011, but the state court did not grant DDI judgment until April of 2014. When it did, it awarded DDI $378,662.10 in fees against BCE, but found that HFI was not liable for any of DDI's fees for two reasons: first, because attorney fees are not reimbursable expenses under KAN. STAT. ANN § 60-1111; and, second, because the Settlement Agreement did not make HFI contractually liable for them. DDI's state court counsel, SLS,

---

[13] *See* Trial Ex. C, ¶s 1.a. and 1.b. DDI never amended its application to employ Beal to reflect the revised Agreement, nor procured the Court's approval of the expanded scope of representation.
[14] Adv. Doc. 17.
[15] *See* Adv. No. 15-5016, Doc. 38 (Order Granting SLS's Motion to Dismiss) and Case No. 14-11131, Doc. 111 (Order on Joint Motion for Relief from Automatic Stay).

**5**

perfected a timely appeal of this ruling to the Kansas Court of Appeals, but, after DDI filed its bankruptcy case, debtor-in-possession counsel Lazzo took that over.

HFI and BCE requested relief from the bankruptcy automatic stay here to pursue post-judgment remedies in state court and to defend the appeal. All parties were granted partial stay relief to pursue their rights in the state court appeal.[16] On October 22, 2014, in a reasoned order, I denied HFI and BCE stay relief to pursue any effort to reduce BCE's liability for fees in state district court.[17] On December 11, 2015, in an unpublished opinion, the Kansas Court of Appeals affirmed the district court's judgment that DDI's attorney fees weren't covered either by the terms of HFI's payment bond or by KAN. STAT. ANN. § 60-1111(a). It also held that the Settlement Agreement did not create a separate or independent duty on HFI's part to pay DDI's fees.[18]

Meanwhile, on February 3, 2015, Beal had filed the adversary proceeding on behalf of DDI against HFI and SLS.[19] The complaint alleged that HFI breached a provision in the 2010 Settlement Agreement in which it agreed that it would "not contest that Dynamic is entitled to recover attorney fees," but could contest the amount of the fees requested "based on the Subcontract and applicable Kansas

---

[16] Doc. 38, 66.
[17] Doc. 111.
[18] See Trial Ex. E, *Building Constr. Enterprises, Inc. v. Public Bldg. Com'n of Johnson County, et al,* 2015 WL 8584771, No. 111820, 362 P.3d 1123 (Table) (Kan. App. Dec. 11, 2015);.KAN. STAT. ANN § 60-1111(a) (2005) (Public works bonds protect payment of debt incurred for "labor furnished, materials, equipment or supplies used or consumed" in a public project).
[19] Adv. No. 15-5016. BCE, the general contractor on the underlying construction project, was insolvent and not made a party defendant in the adversary.

**6**

law."[20] HFI claimed in state court that it had no legal liability to pay DDI's attorney fees because those fees are not included in the scope of the bond's coverage under Kansas law and the state court agreed. Thus, DDI alleged that HFI's legal opposition to the state court's fee award breached the Settlement Agreement. DDI also alleged that SLS had not represented DDI in the breach of settlement dispute against HFI and because no judgment was entered against HFI, DDI sought a declaration that SLS didn't have a valid attorney's lien against the proceeds of the HFI breach action.[21] Beal amended this complaint on April 8, 2015 to include an affirmative professional liability claim for damages against SLS, asserting that the law firm had breached its fiduciary duty and duty of care in failing to segregate recoverable and non-recoverable attorney fees under DDI's subcontract with BCE.[22] HFI responded to the complaint with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), as did SLS.[23] I granted SLS's motion to dismiss on August 14, 2015.[24] DDI and HFI then submitted a joint stipulation of dismissal of the proceeding without prejudice on September 1, 2015 and the adversary proceeding was closed.[25] Nothing in the docket reflects that discovery ever began.

Debtor-in-Possession Counsel's Termination

On March 23, 2015, the Court confirmed DDI's First Amended Plan of Liquidation dated November 24, 2014. Sometime between October of 2014 and June

---

[20] *See* Trial Ex. 17, ¶ 6 as quoted by the Kansas Court of Appeals in *Building Constr. Enterprises, Inc. v. Public Bldg, Com'n of Johnson County, et al,* 2015 WL 8584771 at *3, Trial Ex. E.
[21] Adv Doc. 1.
[22] Adv. Doc. 17.
[23] Adv. Doc 22 and Doc 26.
[24] Adv. Doc. 38.
[25] Adv. Doc. 43.

7

of 2015, Legacy Bank and Randall Salyer decided to replace Mr. Lazzo as debtor-in-possession counsel. On June 22, Salyer visited Lazzo in his office and fired him. According to Lazzo, Salyer told him that only Lazzo and Beal were making any money in the case. No one from DDI or the Bank visited or communicated with Beal. He learned of the termination from Lazzo who wrote Salyer a letter that day, stating his understanding that Salyer had fired both lawyers and requesting reconsideration of the decision.[26] He copied that letter to Beal. On June 25, both Lazzo and Beal moved to withdraw as counsel in a combined pleading.[27]

I question whether Beal was ever actually "fired."[28] Salyer testified that he only fired Lazzo and stated affirmatively that he "didn't fire Mr. Beal."[29] Salyer stated that he "strongly advocated" that Beal be retained, that he had no reason to fire Beal, and that the HFI action was "your [Beal's] claim." In a run of e-mail from June 29 to July 1, Jeffrey A. Deines, as replacement debtor-in-possession counsel, notified Beal that he had been "hired to replace Mr. Lazzo." When Beal wrote Salyer to seek confirmation that both he and Lazzo had been terminated, Salyer advised that DDI had engaged Deines and asked that Beal "give him your full cooperation."[30] That would certainly have been Salyer's opportunity to confirm to Beal that the termination extended to him as well as Lazzo. He didn't.

---

[26] Trial Ex. 1.
[27] Doc. 216. On June 29, they filed notice of attorneys' liens. *See* Doc. 220.
[28] Because Lazzo remained debtor-in-possession counsel until his withdrawal was authorized, one could argue that he notified Beal of Beal's termination in his role as the debtor's agent. But no one argued that at trial.
[29] Salyer Depo., p. 34, l. 7-11*;* p. 40, l. 4-5.
[30] Trial Ex. 3.

8

On July 1, with the withdrawal motion pending, Beal sent Deines, Salyer, and the Bank a revised Agreement with two new terms. The first conditioned Beal's going forward on DDI's agreement not to contest Lazzo's fees and expenses in the bankruptcy case and to pay them immediately. The second new term added a "compromising events" provision insuring that Beal would receive his hourly fees should DDI or the Bank compromise his ability to pursue the case or terminate him before recovery in the case appeared likely.[31] Discussion of the terms of this new proposal continued into July, including assurances from Deines to Beal that Beal had not been terminated.[32] On July 15, Deines wrote Beal:

> The Parties did not fire you a first time and do not have plans to fire you on the Hartford matter. Instead, the parties believe you understand the claim better than anyone and want you to continue under a normal contingency fee agreement.[33]

Beal responded that DDI "absolutely did" fire him and stood by his insistence on the compromising events language.[34] DDI and the Bank ultimately rejected the "compromising events" provision and, on August 19, the Court allowed both Lazzo and Beal to withdraw as counsel.[35]

Beal filed the Fourth Interim and Final Application of Ron D. Beal, P.A. for Attorney Fees and Expenses on December 15, 2015, a few days after the Kansas Court of Appeals affirmed the Johnson County district court's ruling on DDI's fee

---

[31] Trial Ex. 4, § 5 and § 7, ¶ 7.5.
[32] Trial Ex. D1, p. 14.
[33] Trial Ex. D1, p. 32.
[34] Trial Ex. D1, p. 35.
[35] Doc. 233.

**9**

award, absolving HFI of any liability.[36] In it, he requests $33,374 in attorney fees for services in the HFI adversary proceeding, based upon Mr. Beal's having billed 151.7 hours at $220 per hour. He also requests $2,400 for storage of DDI's 41 boxes of files and documents at his home office. DDI and the Bank objected and, after the parties were unable to stipulate to the facts, I conducted an evidentiary hearing on this matter on June 15, 2016. After reviewing that record, the designated deposition transcripts of Randall Salyer, Frank Suellentrop and Brad Yaeger, as well as the parties' legal memoranda, I find and order as follows.

Analysis

Beal's application for *quantum meruit* hourly compensation in this contingency fee case is premised on his having been terminated and thereby thwarted from securing a recovery for DDI that he would have shared. I cannot conclude that DDI terminated him. Even if it had, Kansas case law suggests that in the absence of DDI subsequently recovering on this claim, Beal would not be entitled to a contingency (or any other) fee. Such a recovery is unlikely here given the Kansas Court of Appeals' decision which effectively undercuts DDI's theory of recovery. In addition, Beal's employment was approved as a contingency fee arrangement that I can only alter if it proves "improvident" in light of developments incapable of being anticipated at the time it was approved. Being denied a recovery and being terminated as counsel are two "developments" that every aspiring

---

[36] Doc. 275.

**10**

contingent fee lawyer should anticipate. As the Agreement clearly provides for Beal to be reimbursed expenses, however, he should be awarded his storage fees.

Was Beal Terminated?

The attorney-client Agreement did not expressly address termination, but the Kansas Rules of Professional Conduct provide that a client may discharge his counsel at any time, with or without cause, subject to remaining liable for whatever compensation the lawyer has earned.[37] It is hard to conclude that Beal was terminated. No one affiliated with DDI or Legacy Bank, other than Lazzo, ever told him he was fired. Salyer, Deines, and Pollak, the Bank's counsel, all told Beal they wanted him to stay on, even after he moved to withdraw. DDI and Legacy both agreed that Beal knew more about the HFI claim than anyone. Indeed, retaining him was consistent with their interests: they had little risk, other than exposure to expenses, while he bore considerable risk in pursuing a difficult claim. Only after Beal sought to change the terms of the Agreement and DDI and Legacy refused to agree did he withdraw. This could be interpreted as Beal's repudiation of the Agreement by seeking to amend it and then withdrawing when that effort proved unsuccessful—which is much different from being fired. However, for the purpose of this inquiry, I will assume that Beal was terminated. That brings us to the nature of what he might be owed.

Compensating Discharged Contingency Fee Attorneys: Kansas Law

---

[37] See KAN. SUP. CT. RULES, Rule 226, KRPC 1.16, comment 4.

**11**

The Agreement provides that Beal's fees were "contingent upon [DDI] recovering an economic benefit" and that the "fees are earned when an economic benefit is recovered…"[38] No benefit having been recovered from HFI or SLS, Beal has no contractual right to a contingent fee. He argues that Kansas law affords him relief in *quantum meruit* equal to the value of his services because his termination prevented him from scoring DDI a benefit.

While there is no Kansas case that addresses a no-recovery situation like this one, cases back to the 1930's deal with the rights of discharged lawyers to collect some or all of their stipulated fees. DDI and Bank rely on *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, a case about how a contingent fee for referring a successful medical malpractice case should be divided between a lawyer and his former firm when the lawyer quits the firm after accepting the referral, retains the file and remains active in the matter.[39] The plaintiff in *Shamberg* had recovered a substantial settlement, a percentage of which was payable to either her first lawyer or his former firm as a referral fee. In dicta, the Kansas Supreme Court suggests that if the plaintiff had discharged her lawyers before receiving a recovery, there would've been no contingency fee to divide.[40]

A more helpful case here is *Madison v. Goodyear Tire & Rubber Co.*, in which the Court of Appeals dealt with two lawyers fighting over a worker's compensation

---

[38] Trial Ex. A, p.2, § 3.
[39] 289 Kan. 891, 220 P.3d 333 (2009).
[40] 289 Kan. at 904.

**12**

fee.[41] Before the claimant received a recovery, she discharged her first lawyer and hired a second. Noting Kansas' long-held rule that a discharged lawyer may recover the value of services where the employment is for a stipulated fee, the court held that the same rule should apply to contingency fee cases and that the discharged lawyer should receive the value of the services he had rendered.[42] As in *Shamberg*, the lawyers' claimant had in fact received a recovery.

The Court of Appeals walked back the application of *quantum meruit* to a discharged lawyer's fees in *Consolver v. Hotze* when it held the doctrine to be "fundamentally incompatible" with a contingency fee agreement.[43] In that case, the first lawyer secured a $300,000 personal injury offer, but was then discharged. The second lawyer then secured and recovered a $360,000 settlement upon which the first lawyer claimed a lien. The appellate court reversed the trial court's application of *quantum meruit* to the fee division, holding instead that courts should apply a lodestar calculation and the reasonableness factors set out in the Kansas Rules of Professional Conduct to determine the discharged lawyer's fee.[44] The appellate court remanded the case to make that determination, but the Kansas Supreme

---

[41] 8 Kan. App. 2d 575, 580-81, 663 P.2d 663 (1983), citing *Shouse v. Consolidated Flour Mills Co*, 132 Kan. 108, 294 Pac. 657 (1931).
[42] 8 Kan. App. 2d at 579-81.
[43] 51 Kan. App. 2d 286, 291, 346 P.3d 1094 (2015) (the lodestar method of calculating attorney fees is used to make a determination of a fee award for *quantum meruit*).
[44] *Id.* at 291-93. *See* KAN. SUP. CT. RULES, Rule 226, KRPC 1.5.

**13**

Court granted a petition for review.[45] So, while *Consolver* is enlightening, it is not authoritative.[46]

Whether the lodestar and KRPC 1.5 factors determine a discharged attorney's fee under *quantum meruit* or not, the bottom line is that when Kansas courts allow fees to discharged lawyers, they consider the extent to which the lawyer's services conferred value or benefit on the client. All of the Kansas cases on this topic deal with situations in which there was an actual recovery by the client. Here, there was none, nor is there likely to be one because the adversary proceeding has been dismissed and the state court's decision is final.[47] Beal argues that DDI dismissed the adversary proceeding without prejudice with the intention of stiffing him and then refiling. Nothing in the evidentiary record supports that surmise.

<u>Varying the Terms of Pre-Approved Fee Arrangements in Bankruptcy</u>

Beal insists that his work benefitted the bankruptcy estate and that he should be compensated for that work's value under 11 U.S.C. § 330. DDI and Legacy respond that because Beal was employed on a contractual contingency fee basis under 11 U.S.C. § 328, the terms of that employment may not be reconsidered or

---

[45] 51 Kan. App. 2d 286 (Mar. 20, 2015), *rev. granted* No. 110483 (Jan. 25, 2016) and oral argument scheduled for September 12, 2016.
[46] The Court of Appeals opinion has no force or effect, and the mandate will not issue until disposition of the appeal on review. *See* KAN. SUP. CT. RULES, Rule 8.03(j).
[47] Adv. Doc. 43 filed September 1, 2015. The mandate issued January 25, 2016 in the fee award appeal, *Building Constr. Enterprises, Inc. v. Public Bldg. Com'n of Johnson County, et al*, 2015 WL 8584771, No. 111820, 362 P.3d 1123 (Table) (Kan. App. Dec. 11, 2015).

**14**

altered unless he shows that the arrangement I approved in 2014 became "improvident" in light of developments incapable of being anticipated at that time.[48]

As noted before, neither the motion for approval of Beal's retention nor the order (both drafted by DDI's debtor-in-possession counsel) states whether the employment was approved under § 328. Determining whether a professional has been employed under § 328 or § 330 has been addressed by at least three Circuit Courts of Appeal, but not the Tenth Circuit. The Third Circuit holds that if the order doesn't "expressly and unambiguously" state that the employment is approved under § 328(a), the terms are those that apply in the absence of a specific agreement, "lodestar rates unfettered by the strictures of the second sentence of section 328(a) …."[49] Likewise, the Ninth Circuit opines that if § 328 is not unambiguously specified, § 330 controls by default.[50] By contrast, the Sixth Circuit holds that whether a court approved a fee arrangement under § 328 "should be judged by the totality of the circumstances" considering both the application and order.[51]

Judge Somers applied the Sixth Circuit's standard in *In re Youngquist*, a case in the Wichita division, and I agree with his approach.[52] There he considered the nature of a commercial property manager's employment and fee arrangement. He noted that the trustee's application to employ the manager referenced a

---

[48] 11 U.S.C. § 328(a) (Court can alter previously approved compensation arrangement "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.").
[49] *Zolfo, Cooper & Co. v. Sunbeam–Oster Co., Inc.*, 50 F.3d 253, 261–62 (3rd Cir.1995) (quoting from and agreeing with *In re C & P Auto Transport, Inc.,* 94 B.R. 682, 685 n. 4 (Bankr.E.D.Cal.1988)).
[50] *The Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc.* (*In re Circle K Corp.*), 279 F.3d 669, 671 (9th Cir. 2002).
[51] *Nischwitz v. Miskovic (In re Airspect Air, Inc.),* 385 F.3d 915, 922 (6th Cir. 2004).
[52] *In re Youngquist*, 501 B.R. 877, 894 (Bankr. D. Kan. 2013).

**15**

Management Agreement and that the employing order provided for the manager to receive those fees.[53] He concluded that the employment order he issued "establishes a pre-approved fee arrangement within the meaning of § 328."[54] In this case, DDI's motion to employ Beal proposes that Beal be compensated on a 40% contingency fee basis, but without referring to the Agreement.[55] That motion was filed on September 25, 2014, long after Beal, DDI, and Legacy Bank signed the agreement on July 14, 2014. The Order, entered on October 20, 2014, references the motion, making no reference to the terms of the employment. The relief sought in the application is identical to the fee arrangement contained in the Agreement and makes the 40% contingency fee clear. While attorney fees under a contingency agreement are always subject to a degree of judicial review, that fact alone does not render the employment of contingency lawyers by bankruptcy estates subject to § 330.

By seeking *quantum meruit* compensation and invoking the lodestar measure, Beal is seeking to vary the terms of the approved Agreement. I cannot conclude that varying its terms is justified by "improvidence" in light of later developments that the parties couldn't anticipate at the time employment on a contingency basis was approved. As a Kansas lawyer, Mr. Beal was certainly aware that he could be discharged by his client at any time. And, by agreeing to a fee expressed as a percentage of DDI's recovery, he accepted the possibility (and risk)

---

[53] *Id.*
[54] *Id.*
[55] Doc. 82.

**16**

that the recovery might be zero. A contingency fee arrangement by its very nature takes into account the risk the attorney undertakes. That does not reach the level of "improvidence" necessary to change the Agreement. When he undertook the engagement, Beal knew of the pending appeal concerning HFI's liability for DDI's fees and he surely understood that an adverse appellate ruling would cripple if not gut the claims he asserted in the HFI adversary proceeding. I find no basis for departing from the contingency fee Agreement approved in 2014.

Storage Fees; Conclusion

Mr. Beal's request for administrative expense must therefore be denied, except that he should be allowed to recover from DDI for the storage of the company's files comprised of 41 boxes of litigation documents relative to the Johnson County litigation.[56] Mr. Beal's billing statements reflect that he sought these files from SLS, shortly after his employment was approved and obtained them in late 2014. Mr. Beal's application states that the value of storing these files in his home office after his "discharge" from June 22, 2015 to June 21, 2016, is $2,400.[57] At trial, on questioning from the Bank's counsel, Beal testified the files had finally been picked up but counsel did not establish when DDI retrieved the 41 boxes.[58] The Bank and DDI questioned Beal how he arrived at the value of one year's storage, but did not counter with their own evidence of storage costs. A cost that

---

[56] Beal made several requests for removal of the boxes after his "discharge." Because DDI had ignored his requests to remove the 41 boxes that Beal was storing, he also sought to "destroy" the documents. Doc. 275, p.4, ¶ 18. DDI initially consented to the destruction of the documents, doc. 297, but ultimately, retrieved the documents at some unknown point.
[57] *See* Doc. 279, p. 7.
[58] Based upon the application being filed in December 2015 and DDI's objection, we know that the boxes were stored by Beal into January 2016, if not later.

**17**

amounts to a $200 monthly storage fee for 41 boxes (or approximately $58 per box per year) is reasonable in the court's view. This business has closed and, presumably, had Mr. Beal not kept the files, DDI or Legacy, most likely the latter, would have had to foot the bill for storage rental. The Agreement clearly contemplates the payment of litigation expenses on a current basis. Beal took possession of these boxes to review their contents as part of his litigation services.

Beal's administrative expense application for storage fees should be allowed at $2,400. The balance of his application is denied.

###