**SO ORDERED.**

**SIGNED this 2nd day of November, 2016.**



_____
Robert E. Nugent
United States Bankruptcy Judge
_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| IN RE: | |
|---|---|
| DYNAMIC DRYWALL INC | Case No. 14-11131<br>Chapter 11 |
| **Debtor.** | |

### *AMENDED* ORDER[1] ON RON D. BEAL'S MOTION FOR ADMINISTRATIVE EXPENSES (Doc. 275)

A Kansas lawyer who is working for a stipulated fee and is discharged can claim the value of his services as *quantum meruit*. But when that fee has been approved by the bankruptcy court under 11 U.S.C. § 328, it can only be altered in very unusual circumstances. When that attorney is also employed on an hourly basis to handle certain matters, the value of that work is determined by reference

---

[1] This order amends the Court's original order of September 14, 2016 (Doc. 380) as a result of Beal's motion to alter or amend the September Order, Doc. 383.

1

to 11 U.S.C. § 330(a)(3) and, if the request for compensation meets those standards, it should be approved.

Debtor Dynamic Drywall, Inc. (DDI) employed the Law Offices of Ron D. Beal, PA ("Beal") as special counsel to pursue a variety of construction related actions on behalf of the bankruptcy estate. Beal was to be paid an hourly rate for nearly all of that work (the "Hourly Work"). DDI separately employed Beal to pursue a breach of contract claim against Building Construction Enterprises, Inc. ("BCE") and The Hartford Fire Insurance Company ("HFI"), the bond surety, that arose from an alleged breach of a settlement agreement reached in state court construction litigation over a public works project in Olathe, Kansas (the "Hartford Matter"). As part of that engagement, Beal was also hired to defend an attorney's lien claimed by its former counsel, Stinson Leonard Street ("SLS"), as a result of the same litigation. In connection with the Hartford Matter, DDI filed an application for approval of Beal's employment on September 25, 2014. The motion described a 40% contingent fee arrangement, but did not refer to or include a copy of the proposed Attorney-Client Agreement ("Agreement"). The Court approved the employment on October 20, 2014. In pertinent part, the Agreement, as later amended, provided that Beal would receive 40% of any recovery on the claims described in the scope of representation section of the Agreement. Neither the Application, the Order, nor the Agreement referenced § 328.

**2**

After Beal filed the adversary proceeding to pursue those claims,[2] DDI fired the debtor in possession's lead bankruptcy counsel, Mark J. Lazzo, and hired Jeffrey A. Deines to replace him. After that, Beal attempted to negotiate a revised contingency fee agreement containing an additional provision assuring Beal of an hourly fee recovery if certain "compromising events" transpired. When DDI refused to agree, Beal moved to withdraw. He now claims the value of his time and expenses up to the withdrawal date as an administrative expense on the basis that he was thwarted from successfully pursuing a meritorious claim for the estate.[3] Because I conclude that there is no basis for varying the terms of the contingency fee agreement under 11 U.S.C. § 328, his application for *quantum meruit* compensation on the Hartford Matter is denied, except that he should be compensated for storing numerous files and records of the debtor in his office for over a year.[4] Beal's application for final approval of interim orders compensating him for work done on the Hourly Work should be approved.

Facts

Dynamic Drywall filed this chapter 11 case on May 21, 2014. Mark J. Lazzo was employed as debtor-in-possession counsel. Randall Salyer signed the petition as president of DDI, a position he accepted at the behest of Legacy Bank, DDI's senior secured lender. Salyer's role was as a restructuring or workout officer. The

---

[2] *Dynamic Drywall, Inc. v. Hartford Fire Insurance Co., et al,* Adv. No. 15-5016 (Bankr. D. Kan.) filed February 3, 2015 (hereafter the Hartford Matter).

[3] *See* 11 U.S.C. § 503.

[4] At the evidentiary hearing held on June 15, 2016 on the motion for administrative expenses, Doc. 275, Ron D. Beal appeared on his own behalf. Jeffrey Deines appeared on behalf of Dynamic Drywall, Inc. and Creath Pollak appeared on behalf of Legacy Bank, the debtor's principal lender which joined with debtor in opposing the motion.

3

Bank sponsored the petition's filing to preserve DDI's accounts receivable and prosecute certain contractual claims of DDI, including some potential claims against DDI insiders, mostly for the Bank's benefit. The Bank had a security interest in these claims.

Beal's Employment as Special Counsel

Beal, DDI, and Legacy Bank signed an Attorney-Client Agreement ("Agreement") on July 24, 2014.[5] The Agreement provided for Beal to pursue claims on a 40% contingency fee basis against BCE and HFI for allegedly breaching their settlement agreement not to object to attorney fees in the Johnson County, Kansas litigation, and to defend against SLS's claimed attorney's lien on the breach claim (the "Hartford Matter"). The Agreement is straightforward. Beal is to receive "professional fees" when the debtor receives an "economic benefit," regardless when the benefit is conferred and whether it is conferred by settlement, judgment, or after an appeal. The fees equal 40% of the benefit, calculated after deduction of Beal's expenses. Beal was entitled to recover those first. In any event, DDI was obligated to reimburse Beal for his expenses, regardless of the outcome of the case.[6]

Lazzo filed a motion to employ Beal under this Agreement on September 25, 2014 and the Court entered an order approving the employment on October 20, 2014.[7] Both the application and Beal's affidavit fail to attach the Agreement or refer to it, nor is it mentioned in the order granting the application.[8] But the employment

---

[5] Trial Ex. A.
[6] *See* Trial Ex. A, ¶¶ 3 and 4.
[7] *See* Doc. 82 and 110.
[8] *See* Docs. 82 and 85.

4

application and Beal's affidavit provide for him to be compensated on a 40% contingency fee basis, net of litigation expenses, and the order approving employment provides that Beal is employed as special counsel "on the terms set forth in the Application."[9] Neither the application nor the order refer to any specific bankruptcy code provision under which employment was sought or approved.

Beal commenced the adversary proceeding on behalf of DDI against HFI (and SLS) on February 3, 2015.[10] The Agreement was later revised in April of 2015, adding that Beal was authorized to pursue affirmative claims against SLS in the Hartford Matter, but the 40% contingent fee remained the same.[11] The adversary complaint was then amended to assert a malpractice or breach of fiduciary duty claim against SLS related to its billing practices in the Johnson County action.[12]

In addition to the Hartford Matter, Beal was later separately employed as special counsel to pursue several other construction contract payment claims against general contractors and bond sureties on unrelated projects (the "Hourly Work").[13] On December 10, 2014 Lazzo filed a motion to employ Beal as special counsel for these matters, proposing to compensate Beal on an hourly basis.[14] In this application, Lazzo noted that Beal was prosecuting the Hartford Matter on a

---

[9] Doc. 110.
[10] Adv. No. 15-5016.
[11] *See* Trial Ex. C, ¶s 1.a. and 1.b. DDI never amended its application to employ Beal to reflect the revised Agreement, nor procured the Court's approval of the expanded scope of representation.
[12] Adv. Doc. 17.
[13] Beal ultimately commenced eight (8) adversary proceedings on behalf of DDI in 2015 against various contractors under the hourly arrangement.
[14] Doc. 136.

5

Case 14-11131　　Doc# 388　　Filed 11/02/16　　Page 5 of 18

40% contingency fee basis. On January 6, 2015, the Court approved Beal's employment as special counsel on the Hourly Work.[15]

The Hartford Litigation

Two prior orders in this case discuss the underlying state court case referred to here as the Hartford Matter.[16] Neither Lazzo nor Beal represented DDI in the state court proceedings. BCE was a general contractor on a public works project in Olathe. DDI was one of BCE's subcontractors and HFI wrote the public works surety bond that assured subcontractors they would be paid. Payment disputes among various parties to the contract ensued, resulting in a lawsuit being filed in Johnson County in 2006. In 2010, BCE, HFI and DDI settled all their claims except for DDI's "prevailing party" claim for attorney fees and expenses under BCE's subcontract and HFI's bond. At some point, BCE became insolvent, focusing DDI's collection efforts on HFI. DDI's attorney fee claim was tried in 2011, but the state court did not grant DDI judgment until April of 2014. When it did, it awarded DDI $378,662.10 in fees against BCE, but found that HFI was not liable for any of DDI's fees for two reasons: first, because attorney fees are not reimbursable expenses under KAN. STAT. ANN § 60-1111; and, second, because the Settlement Agreement did not make HFI contractually liable for them. DDI's state court counsel, SLS, perfected a timely appeal of this ruling to the Kansas Court of Appeals, but, after DDI filed its bankruptcy case, debtor-in-possession counsel Lazzo took that over.

---

[15] Doc. 138.
[16] *See* Adv. No. 15-5016, Doc. 38 (Order Granting SLS's Motion to Dismiss) and Case No. 14-11131, Doc. 111 (Order on Joint Motion for Relief from Automatic Stay).

**6**

HFI and BCE requested relief from the bankruptcy automatic stay here to pursue post-judgment remedies in state court and to defend the appeal. All parties were granted partial stay relief to pursue their rights in the state court appeal.[17] On October 22, 2014, in a reasoned order, I denied HFI and BCE stay relief to pursue any effort to reduce BCE's liability for fees in state district court.[18] On December 11, 2015, in an unpublished opinion, the Kansas Court of Appeals affirmed the district court's judgment that DDI's attorney fees weren't covered either by the terms of HFI's payment bond or by KAN. STAT. ANN. § 60-1111(a). It also held that the Settlement Agreement did not create a separate or independent duty on HFI's part to pay DDI's fees.[19]

Meanwhile, on February 3, 2015, Beal had filed the Hartford Matter on behalf of DDI against HFI and SLS.[20] The complaint alleged that HFI breached a provision in the 2010 Settlement Agreement in which it agreed that it would "not contest that Dynamic is entitled to recover attorney fees," but could contest the amount of the fees requested "based on the Subcontract and applicable Kansas law."[21] HFI claimed in state court that it had no legal liability to pay DDI's attorney fees because those fees are not included in the scope of the bond's coverage under

---

[17] Doc. 38, 66.
[18] Doc. 111.
[19] See Trial Ex. E, *Building Constr. Enterprises, Inc. v. Public Bldg. Com'n of Johnson County, et al,* 2015 WL 8584771, No. 111820, 362 P.3d 1123 (Table) (Kan. App. Dec. 11, 2015); KAN. STAT. ANN § 60-1111(a) (2005) (Public works bonds protect payment of debt incurred for "labor furnished, materials, equipment or supplies used or consumed" in a public project).
[20] Adv. No. 15-5016. BCE, the general contractor on the underlying construction project, was insolvent and not made a party defendant in the adversary.
[21] *See* Trial Ex. 17, ¶ 6 as quoted by the Kansas Court of Appeals in *Building Constr. Enterprises, Inc. v. Public Bldg, Com'n of Johnson County, et al,* 2015 WL 8584771 at *3, Trial Ex. E.

**7**

Kansas law and the state court agreed. Thus, DDI alleged that by opposing DDI's request for a fee award as matter of law, HFI breached the Settlement Agreement. DDI also alleged that SLS had not represented DDI in the breach of settlement dispute against HFI. Because SLS did not obtain a judgment against HFI, DDI sought a declaration that SLS didn't have a valid attorney's lien against the proceeds of the HFI breach action.[22] Beal amended this complaint on April 8, 2015 to include an affirmative professional liability claim for damages against SLS, asserting that the law firm had breached its fiduciary duty and duty of care in failing to segregate recoverable and non-recoverable attorney fees under DDI's subcontract with BCE.[23] HFI responded to the complaint with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), as did SLS.[24] I granted SLS's motion to dismiss on August 14, 2015.[25] After Beal withdrew, DDI and HFI submitted a joint stipulation of dismissal of the proceeding without prejudice on September 1, 2015 and the adversary proceeding was closed.[26] Nothing in the docket reflects that discovery ever began.

### Lazzo Terminated as Debtor-in-Possession Counsel

On March 23, 2015, the Court confirmed DDI's First Amended Plan of Liquidation dated November 24, 2014. Sometime between October of 2014 and June of 2015, Legacy Bank and Randall Salyer decided to replace Mr. Lazzo as debtor-

---

[22] Adv Doc. 1.
[23] Adv. Doc. 17.
[24] Adv. Doc 22 and Doc 26.
[25] Adv. Doc. 38.
[26] Adv. Doc. 43.

in-possession counsel. On June 22, Salyer visited Lazzo in his office and fired him. According to Lazzo, Salyer told him that only Lazzo and Beal were making any money in the case. No one from DDI or the Bank visited or communicated with Beal. Beal learned of the termination from Lazzo who copied him on a letter Lazzo wrote to Salyer that day, stating his (Lazzo's) understanding that Salyer had fired both lawyers and requesting reconsideration of the decision.[27] On June 25, both Lazzo and Beal moved to withdraw as counsel in a combined pleading.[28]

The copied Lazzo letter is the only evidence of anyone telling Beal he had been fired. There is no evidence that Salyer, Legacy Bank, or any successor debtor in possession counsel ever fired Beal."[29] Salyer testified that he only fired Lazzo and stated affirmatively that he "didn't fire Mr. Beal."[30] Salyer stated that he "strongly advocated" that Beal be retained, that he had no reason to fire Beal, and that the HFI action was "your [Beal's] claim." In a run of e-mail from June 29 to July 1, Jeffrey A. Deines, as replacement debtor-in-possession counsel, notified Beal that he had been "hired to replace Mr. Lazzo." When Beal wrote Salyer to seek confirmation that both he and Lazzo had been terminated, Salyer advised that DDI had engaged Deines and asked that Beal "give him your full cooperation."[31] That would certainly have been Salyer's opportunity to confirm to Beal that the termination extended to him as well as Lazzo. Salyer didn't.

---

[27] Trial Ex. 1.
[28] Doc. 216. On June 29, they filed notice of attorneys' liens. *See* Doc. 220.
[29] Because Lazzo remained debtor-in-possession counsel until his withdrawal was authorized, one could argue that he notified Beal of Beal's termination in his role as the debtor's agent. But no one argued that at trial.
[30] Salyer Depo., p. 34, l. 7-11*;* p. 40, l. 4-5.
[31] Trial Ex. 3.

**9**

On July 1, with the withdrawal motion pending, Beal sent Deines, Salyer, and the Bank a revised Agreement with two new terms. The first conditioned Beal's going forward in the Hartford Matter on DDI's agreement not to contest Lazzo's fees and expenses in the bankruptcy case and to pay them immediately. The second new term added a "compromising events" provision insuring that Beal would receive his hourly fees should DDI or the Bank compromise his ability to pursue the case or terminate him before recovery in the case appeared likely.[32] Discussion of the terms of this new proposal continued into July, including assurances from Deines to Beal that Beal had not been terminated.[33] On July 15, Deines wrote Beal:

> The Parties did not fire you a first time and do not have plans to fire you on the Hartford matter. Instead, the parties believe you understand the claim better than anyone and want you to continue under a normal contingency fee agreement.[34]

Beal responded that DDI "absolutely did" fire him and stood by his insistence on the compromising events language.[35] DDI and the Bank ultimately rejected the "compromising events" provision and, on August 19, the Court allowed both Lazzo and Beal to withdraw as counsel.[36]

Beal filed this Fourth Interim and Final Application of Ron D. Beal, P.A. for Attorney Fees and Expenses on December 15, 2015, a few days after the Kansas Court of Appeals affirmed the Johnson County district court's ruling on DDI's fee

---

[32] Trial Ex. 4, § 5 and § 7, ¶ 7.5.
[33] Trial Ex. D1, p. 14.
[34] Trial Ex. D1, p. 32.
[35] Trial Ex. D1, p. 35.
[36] Doc. 233.

**10**

award, absolving HFI of any liability.[37] In it, he requests final approval of his fees and expenses for the Hourly Work. He also requests $33,374 in attorney fees for services in the Hartford Matter, based upon Mr. Beal's having billed 151.7 hours at $220 per hour. He also requests $2,400 for storage of DDI's 41 boxes of files and documents at his home office. DDI and the Bank objected and, after the parties were unable to stipulate to the facts, I conducted an evidentiary hearing on this matter on June 15, 2016. In preparing these findings of fact and the conclusions of law that follow, I reviewed that record and the designated deposition transcripts of Randall Salyer, Frank Suellentrop and Brad Yaeger, along with the parties' legal memoranda.

Analysis

Beal premises his application for *quantum meruit* hourly compensation for work done in the Hartford Matter on his having been terminated and thereby thwarted from securing a recovery for DDI that he would have shared. DDI did not terminate him. Beal's employment was approved as a contingency fee arrangement. Section 328 provides that I can only alter a fee agreement if it proves "improvident" in light of developments incapable of being anticipated at the time it was approved. Being denied a recovery and being terminated as counsel are "developments" that should be anticipated by any contingent fee lawyer. The Court cannot now vary that Agreement to allow Beal to recover compensation on some other basis. His *quantum meruit* application should be denied, but, as the Agreement clearly provides for Beal

---

[37] Doc. 275.

**11**

to be reimbursed expenses, his request for storage fees is granted. Likewise, his unopposed application for final approval of the Hourly Work fees is granted.

Beal Was Not Terminated

The attorney-client Agreement did not expressly address termination, but the Kansas Rules of Professional Conduct provide that a client may discharge his counsel at any time, with or without cause, subject to remaining liable for whatever compensation the lawyer has earned.[38] But Beal was not discharged. No one affiliated with DDI or Legacy Bank, other than Lazzo, ever told him he was fired. Salyer, Deines, and the Bank's counsel, Pollak, all told Beal they wanted him to stay on, even after he moved to withdraw. DDI and Legacy agreed that Beal knew more about the Hartford claim than anyone. Indeed, retaining him was consistent with their interests: they had little risk, other than exposure to expenses, while he bore considerable risk in pursuing a difficult claim. Only after Beal sought to change the terms of the Agreement and DDI and Legacy refused to agree did he withdraw. From this record, I conclude that Beal repudiated the Agreement by seeking to amend it and then withdrew when that effort proved unsuccessful. That is much different from being fired.

Section 328 and Pre-Approved Fee Arrangements in Bankruptcy

Beal insists that because his work was reasonably calculated to benefit the bankruptcy estate when it was performed, he should be compensated for that work's value as 11 U.S.C. § 330 provides. DDI and Legacy respond that because Beal was

---

[38] See KAN. SUP. CT. RULES, Rule 226, KRPC 1.16, comment 4.

employed on a contractual contingency fee basis under 11 U.S.C. § 328, the terms of that employment may not be reconsidered or altered unless he shows that the arrangement I approved in 2014 became "improvident" in light of developments incapable of being anticipated at that time.[39] DDI and Legacy are correct.

Neither the motion for approval of Beal's retention nor the order (both drafted by DDI's debtor-in-possession counsel) states whether the employment was approved under § 328. Determining whether a professional has been employed under § 328 or § 330 does not necessarily depend on an express reference to either section in the application. At least three Circuit Courts of Appeal have addressed this issue, but not the Tenth Circuit. The Third Circuit holds that if the order doesn't "expressly and unambiguously" state that the employment is approved under § 328(a), the terms are those that apply in the absence of a specific agreement, "lodestar rates unfettered by the strictures of the second sentence of section 328(a) ...."[40] Likewise, the Ninth Circuit opines that if § 328 is not unambiguously specified, § 330 controls by default.[41] By contrast, the Sixth Circuit holds that whether a court approved a fee arrangement under § 328 "should be judged by the totality of the circumstances" considering both the application and order.[42]

---

[39] 11 U.S.C. § 328(a) (Court can alter previously approved compensation arrangement "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.").
[40] *Zolfo, Cooper & Co. v. Sunbeam–Oster Co., Inc.*, 50 F.3d 253, 261–62 (3rd Cir.1995) (quoting from and agreeing with *In re C & P Auto Transport, Inc.*, 94 B.R. 682, 685 n. 4 (Bankr.E.D.Cal.1988)).
[41] The Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In re Circle K Corp.), 279 F.3d 669, 671 (9th Cir. 2002).
[42] Nischwitz v. Miskovic (In re Airspect Air, Inc.), 385 F.3d 915, 922 (6th Cir. 2004).

**13**

Judge Somers applied the Sixth Circuit's standard in *In re Youngquist*, a case in the Wichita division.[43] There he considered the nature of a commercial property manager's employment and fee arrangement. He noted that the trustee's application to employ the manager referenced a Management Agreement and that the employing order provided for the manager to receive those fees.[44] He concluded that the employment order he issued "establishes a pre-approved fee arrangement within the meaning of § 328."[45]

I likewise apply the totality of the circumstances standard. In this case, DDI's motion proposed to employ Beal on a 40% contingency fee basis net of litigation expenses, but did not mention the Agreement.[46] That motion was filed on September 25, 2014, long after Beal, DDI, and Legacy Bank signed the agreement on July 14, 2014. The Order, entered on October 20, 2014, approved the motion "on the terms set forth in the Application," without specifically describing the terms of the engagement. But the terms set out in the application were identical to the terms contained in the Agreement. The contingency fee arrangement is clear and a 40% contingent fee is a reasonable fee in this District.[47] If Beal truly believed that his 40% contingent fee agreement had not been pre-approved and he was not bound by

---

[43] *In re Youngquist*, 501 B.R. 877, 894 (Bankr. D. Kan. 2013).
[44] *Id*.
[45] Id.
[46] Doc. 82.
[47] The Court reasonably concluded that the Agreement existed, notwithstanding counsel's failure to attach or mention the Agreement in the employment application. KAN. SUP. CT. RULES, Rule 226, KRPC 1.5(d) provides that a contingent fee arrangement must be in writing. That Beal was employed in the Hartford Matter on a contingent fee basis is further supported by his not filing any interim fee applications during the Hartford Matter; Beal submitted interim fee applications with hourly billing statements on the Hourly Work, but not the Hartford Matter.

**14**

Case 14-11131    Doc# 388    Filed 11/02/16    Page 14 of 18

that basis for compensation, he would not have attempted to modify the Agreement prior to his voluntary motion to withdraw being granted. In short, while attorney fees under a contingency agreement are always subject to being revisited under § 328 for the improvidence exception, that does not render the employment of contingency lawyers by bankruptcy estates subject to § 330. I approved Beal's employment on a 40% contingent fee basis under § 328.

By seeking *quantum meruit* compensation and invoking the lodestar measure, Beal is seeking to vary the terms of the pre-approved contingency fee Agreement. Once an engagement is approved under § 328, the bankruptcy court's ability to modify the fee arrangement is limited.[48] I cannot conclude that approving the contingency fee was "improvident" in a way that would justify my varying its terms. And other than Beal's contention that he was discharged, which I reject, he has not shown that his employment on a contingency basis was improvident at the time it was approved.[49] There were no later developments *incapable of being anticipated here.*[50] Any lawyer can be discharged by his client at any time. Likewise, a lawyer may withdraw from representing a client under a number of

---

[48] *In re Barron,* 325 F.3d 690, 692-93 (5th Cir. 2003) (contrasting § 328 and § 330 governing attorney's fees in representing bankruptcy estates; § 328 avoids uncertainty of court review after work is completed while § 330 provides court review after work is completed for reasonableness).

[49] Beal contends he is entitled to quantum meruit compensation because he was discharged by debtor; he has not demonstrated that the approved contingent fee basis was "improvident." *See In re Yablon,* 136 B.R. 88, 91-92 (Bankr. S.D.N.Y. 1992) (special counsel had burden of proof where it seeks compensation on terms different from his retention); *In re High Voltage Engineering Corp.,* 311 B.R. 320 (Bankr. D. Mass. 2004) (Once financial advisor's employment is approved under a pre-agreed compensation plan, the terms and conditions of compensation cannot be modified without a finding they were improvident.)

[50] *See In re Barron, supra.*

**15**

circumstances.[51] And, by agreeing to a fee expressed as a percentage of DDI's recovery, Beal accepted the possibility (and risk) that the recovery might be zero. A contingency fee arrangement by its very nature takes into account the risk the attorney undertakes. The risk in pursuing the Hartford Matter was substantial here, given the pendency of debtor's appeal of the underlying state court fee award, a fact known by Beal when he agreed to the contingent fee arrangement.

Several courts have declined to modify contingent fee agreements approved under § 328.[52] They also have rejected attempts by the retained professional to change the basis for his compensation from an approved contingency basis to a *quantum meruit* basis as Beal seeks to do in this case.[53] There is no basis for departing from the 40% contingency fee arrangement approved in 2014. Because there has been no recovery by debtor in the Hartford Matter, Beal is entitled to no fee.

Beal's request for *quantum meruit* attorney fees in the Hartford Matter must therefore be denied, except that he should be allowed to recover from DDI for the storage of the company's files comprised of 41 boxes of litigation documents relative

---

[51] *See* KAN. SUP. CT. RULES, Rule 226, KRPC 1.16(b), enumerating circumstances when a lawyer may withdraw.
[52] *See e.g., ASARCO, L.L.C. v. Barclays Capital, Inc. (In re ASARCO, L.L.C.),* 702 F.3d 250 (5th Cir. 2012) (reversing bankruptcy court's enhancement of contingent fee for financial advisor because the advisor provided significantly more extensive services than expected; this was insufficient to satisfy the improvidence exception under § 328); *In re Reimers,* 972 F.2d 1127 (9th Cir. 1992) (special counsel's preapproved 40% contingent fee under § 328 to pursue state law fraud claim for bankruptcy estate could not be reviewed for reasonableness under § 330; bankruptcy court erred in reducing fee after examination of special counsel's time records.)
[53] *In re Yablon,* 136 B.R. 88 (Bankr. S.D.N.Y. 1992) (Special counsel for chapter 11 debtor employed to pursue RICO action against accountants under a contingent fee agreement sought quantum meruit payment for services rendered to date; noting that "[c]ourts have rarely altered the terms and conditions of a professional's employment" on the grounds of improvidence.).

**16**

to the Johnson County litigation.[54] Mr. Beal's billing statements reflect that he sought these files from SLS, shortly after his employment was approved and obtained them in late 2014 for review in anticipation of filing the Hartford complaint. Mr. Beal's application states that the value of storing these files in his home office after his "discharge" from June 22, 2015 to June 21, 2016, is $2,400.[55] At trial, on questioning from the Bank's counsel, Beal testified the files had finally been picked up but counsel did not establish when DDI retrieved the 41 boxes.[56] The Bank and DDI questioned Beal how he arrived at the value of one year's storage, but did not counter with their own evidence of storage costs. A cost that amounts to a $200 monthly storage fee for 41 boxes (or approximately $58 per box per year) is reasonable in the court's view. This business has closed and, presumably, had Mr. Beal not kept the files, DDI or Legacy, most likely the latter, would have had to foot the bill for storage rental. The Agreement clearly contemplates the payment of litigation expenses on a current basis. Beal took possession of these boxes to review their contents (the state court Hartford litigation and settlement) as part of his litigation services.

Beal's administrative expense application for storage fees in the Hartford Matter should be allowed at $2,400. The previously-approved applications for interim compensation on the Hourly Work should be approved as final. The balance

---

[54] Beal made several requests for removal of the boxes after his "discharge." Because DDI had ignored his requests to remove the 41 boxes that Beal was storing, he also sought to "destroy" the documents. Doc. 275, p.4, ¶ 18. DDI initially consented to the destruction of the documents, doc. 297, but ultimately, retrieved the documents at some unknown point.
[55] *See* Doc. 279, p. 7.
[56] Based upon the application being filed in December 2015 and DDI's objection, we know that the boxes were stored by Beal into January 2016, if not later.

**17**

of Beal's application for the Hartford Matter is denied in accordance with this Amended Order.

###